3090205 Sitco Petroleum v. Gibbons Counsel, may I proceed? May it please the Court, Philip Johnson representing Sitco Council. I'm here on behalf of the respondent of this case, suggesting to the Court that I believe that the decision of the arbitrator and the decision of the Commission and Circuit Court affirming those decisions was improper. And I would raise two elemental questions regarding that. One, as you note in the brief, is we're questioning whether or not the statute of limitations may have expired in this case. And secondly, if the Court should find that the statute of limitations had not expired in this case, we would recommend to the Court that we believe the facts in this case would suggest that, as a matter of law, the petitioner failed to give timely notice as required by Section 6 of the Illinois Workers' Compensation Act. The issue of the statute of limitations is somewhat complex in this case because we're dealing with a, obviously, a very devoted employee, a very nice lady. She has always done her job. An exemplary employee who has been employed since 1984 with this company in various capacities, most of which were involved in the manufacturing of petroleum products involved. The difficulty in the case regarding the statute of limitations rises on the fact that we believe that, based upon this lady's intelligence level, her obvious expertise, her knowledge of her work duties, and her knowledge of her bodily functions, we believe that a reasonable person, given the same or similar circumstances, would have believed that the condition of carpal tunnel she experienced within both of her hands was manifested itself to her to the point where the statute of limitations would have expired in this case because she would have known or should have known as a reasonable person that as late as January 2001 that she had a condition of carpal tunnel which might or could be related to her work activities. I say this with full understanding of the testimony in the record that the Petitioner did testify on direct examination and was somewhat consistent in cross-examination by the attorney who did cross-examine her at that time, that she was not aware that she had a work-related condition, but she was aware as early as 1999 of the significance of the problem in her hand, that in 1999 she was diagnosed by, I strike that that would be a mistake. She was identified having neurological problems within her hands when she saw Dr. Shaw in November of 1999. And subsequently in the year 2000, she was aware of a neurological problem within her hand. She says that she was not told, quote, that it was carpal tunnel, but she was aware of this problem. And she also was aware, as she knows from her testimony, what she related to the doctor in terms of work activities somewhat inconsistent with her testimony, and that her testimony was that she was aware of these multiplicity of tasks which involved repetitive motions, in her opinion. And yet she says she never related those to her doctor when she went to see him. I find it inconsistent or inconceivable, but that was her testimony. And it stands. Yes. Roberts, are you getting to the chase here? Sure. The commission did make extensive findings that the claimant was not aware of the relationship between her condition and work until 2002. They found her specifically and then expressed findings she testified credibly. As you know, it's the primary function of the commission to weigh the credibility and believability and the weight to be given to the testimony. How do we disregard their findings without basically you're inviting us to sort of reevaluate, substitute our judgment for the commission? Where did the commission specifically go wrong in their findings? I think your point is well taken, and I think that's the most difficult part of my argument, is to persuade you that the commission could substitute what she reasonably should have believed in 1999 and 2000, 2001. And I do agree with Your Honor. However, I think that's the second part of why this case was appealed. If we find that their belief in her testimony was valid, that the statute should not have run because she, even as a reasonable person, would not have known, I still think the inconsistency in the arbitrator's decision and the following decision is as follows. This lady, subsequent to seeing her doctor, was directed to a specialist, and subsequent to seeing the specialist in the year 2001, continued to work in the same capacity and developed continuing symptoms. In the year 2002, she went to her boss or supervisor at that time and discussed the issue and recognized the issue that she had a work-related condition. And I would certainly say that counsel would stipulate that that occurred in 2002 by the petitioner's own testimony. Now, if in fact at that point, and that testimony is reflected in the record at page 106, So we know that in the year 2002, she knew that she had a work-related condition, which she discussed there. Now, nothing transpires in terms of filing a claim until such time as an application for adjustment of claim is filed, and let's assume for the sake of argument within the statutory period. In the application for adjustment of claim, she alleges an accident of April 15, 2003. Well, if she gave notice in 2002, then she gave notice not within the 45-day period, and you'll notice that we strenuously argue that point. You can't give notice a year before the accident date. Now, if you wanted to say, well, maybe the accident date is April 2003, but if you look at what brought about the accident date, it's the report that she filled out. In the report of accident she filled out in April of 2003, she says that she developed this problem in 1999. Now, she says she made that statement because she called a representative from the insurance company who told her, well, you put down when you first noticed this problem. So she put down 1999. Now, these may seem like very minute points, but when they're packaged together and they're pieced together, to me they form a situation where you have a person giving notice of an accident a year beforehand, and the accident, she alleges, is based upon April of 2003, which is the date she walked in and filled out the paperwork. Well, if you want to say that the accident was in April, she can't give notice in 2002 to an accident in 2003, and if you want to say the accident was in 2002, then there's no application filed for an accident in 2002. So you can't have it both ways. You can't say, well, we gave you, we filed an application on time for 2003, but we really gave you notice in 2002. And if you want to say, well, the employer got notice in 2003 when she filled out the accident report, well, that doesn't fly either because there's nothing in there about that. And it says, if you read that carefully, it says that she first developed a crime in 1999. So you can't have it both ways. You've got to, when you go to trial, we all learn this, you've got to pick your theory. Unfortunately, here... Why is it an either-or proposition? I mean, is it not conceivable in the real world that an employer could deduce the claimant's condition as related to employment before the claimant does? Is it not possible? Oh, is it not possible? I think it is possible that based upon the statement made in 2002 that the employer could have assumed that this lady had a condition of carpal tunnel syndrome. Even if she didn't really? Absolutely. Okay. But you still have to file the claim. And here's the point, Judge. You have to file the claim. So the fact that you have notice that a person fell over and broke his arm doesn't  his arm. The notice provision runs consistent with the filing of the application adjustment claim for an accident. So my argument is you can't now file an accident in 2003 and say, well, I gave you a notice a year ago. You still have to give, in my opinion, this is my opinion, I believe that that notice had to be given either simultaneously or subsequent to April of 2003. And I don't believe that was done. Well, I don't want to argue technicalities, but I guess I am in a sense. Doesn't Section 6 of the Act only state the notice shall be given no later than 45 days after the accident? Absolutely. Is there any argument that there could be notice given prior to the alleged accident date, not in a trauma case, but in a case like this? In my opinion, there is. In my opinion, this lady did her very best to present the accident for April and her attorney filed for April 15th, which was the date the form was. My interpretation of the law is that subsequent to that date, there has to be some statement regarding the relationship between that accident date and the employment. And if you look at that where she alleges April 15th, she says, I had this problem since 1999. That's not notice of that accident. That is just saying. She might have had the problem, but how does she know it's work-related? She knew it was work-related in 2002 because at page 106 of the record, she testified that in 2002 she knew it was work-related. All right. And she filed, what, less than two years later? Yes. It's not a statute question at that point. At that point, as I said in my opening statement, it is not a statute question. It's a notice question. And it's not a defective notice question. It's a jurisdictional lack of notice question. And with your permission, did that answer your question? Because I want to move on to the last portion. The last portion of the argument has to do with the relationship between the work activity and the finding of a causal relationship in the carpal tunnel. Unquestionably, this lady has a carpal tunnel. Unquestionably, surgery was necessary. When I was a very young lawyer in 1965, before I became sworn in, I used to work in an office for Fred Lane, and I used to sit in on the medical trial technique quarterly in order to get through school, and I would take the sessions. And one of the things we learned about was hypothetical questions. And we learned about how accurate hypothetical questions had to be. And we learned that when you put them in, make sure you put in accurate statements so that the opinions expressed are consistent with the facts. And I would call your court's attention to the fact that the hypothetical question as found in our brief at page 17 and in the transcript record at page 163 is not misleading intentionally, but certainly inaccurate. And the reason it's inaccurate is this. As you know, Dr. Pankaj, I want to say that's his name, P-A-N-K-A-J, Pankaj, I believe, he testified that originally when he saw this lady in 2003, he expressed no opinion regarding causation. He said, I really didn't know her job duties. When he was propounded this hypothetical question, which is extremely short, he said, well, based on that, it's possible. He also said a number of other things that 85 to 90% of carpal tunnel cases are not work-related, but let's not get into that. What he said in the hypothetical question, it says that this lady started working in 1984, and when she started out, she was actually working with hand impact wrenches as well as chisels and doing manual manipulations, et cetera. And I agree that she did certain manual manipulations of valves. I agree that she did certain computer work. Here's the problem with that hypothetical question. The only time this lady worked with pneumatic devices, air impact wrenches, et cetera, can be found in her prior medical records where when she filled out a form, they asked her if she had any prior employment that would and what type of tools she used. This is in prior employment, not here. And it says that she was a contractor, and she worked with fiberglass insulation, she was exposed to noise, heavy equipment operating, softness, PCV plumbing, parts cleaning, wood stripping, vibration, jackhammers, and tampering down blacktop. Now, why is that important? Well, that's important, and for the Court's benefit, that's in Respondent's Exhibit 4 for identification in the transcript. That's important because, as I did learn in the trial technique lesson, that puts facts into that case which are not relevant to this lady's employment. Now, why is that important to me? That's important to me because in July of 2003, the employer in this case did ergonomics studies. And counsel is going to tell you, I know, that the ergonomics studies were done without talking to the plaintiff. But that is an irrelevant factor to an ergonomics study. What he did was he studied the job that her description was, and he took a low in those categories which would give rise to a carpal tunnel case. He didn't say she didn't do them. He said he did a study. And after the study was over, counsel may tell you, well, they made recommendations for ergonomic changes. But they didn't make ergonomic changes for the purpose of carpal tunnel cases. They had to do with the site alignment of certain of the monitors and height alignment of certain of the chairs. That is why the hypothetical question is so important. Because in the hypothetical question, he did not include in those facts those which were in the ergonomics study that said that it was an extremely low-impact job. And basically, not only the gentleman who performed the ergonomics study, but also the physician who testified for the respondent in this case said that based on everything he saw, the history, the ergonomics study, conference, examination of the records, this lady had carpal tunnel syndrome which was not related to the facts and circumstances of her employment activities. I believe that the commission decision, if you choose to say the statute did not expire, I respect or I disagree with it, but I respect your opinion. But I strongly recommend on the issue of notice and the issue of the very, very faulty hypothetical question that this decision should be reversed. I thank you for your time. Thank you, counsel. You may respond. May it please the Court, counsel? Luis Pagani on behalf of the claimant here. Now, counsel Indicate, I'm going to get into Dr. Rodarte's, I'm sorry, Mr. Rodarte's testimony, the doctor involved, all those issues. I'm not going to. What I'm going to tell you is the commission is given deference to establish credibility. Here they have done that. They found that the claimant testified credibly. I'll start with a reasonable person's standard. Here what counsel failed to mention is not even the treating doctor gave a relationship between job duties and this condition until early 2002. In fact, there was a note earlier that indicated there was no causation here. Now, he clarified that in his deposition testimony and became, well, based on the job duties, yes, I do find that there's causation. So for a reasonable person to establish that their job duties caused these problems prior to an orthopedic surgeon, I think that's not reasonable to find here. I think the claimant was perfectly reasonable in determining there was a relationship in early 2002. Given that, there's no statute of limitations issue here. If you get over the causation issue, what about he strenuously argued there was a problem with the notice. It was not given within 45 days after the accident, he argues. What is your response to his position on that? My response is the notice provision, I would argue, is so the respondent can investigate claims to see if they're related to work activities or not. Clearly, they had an opportunity to do so here. When Nurse Bingham was made aware of that, the respondent's in-house nurse, they investigated the claim with Mr. Rodarte, with their doctor. They certainly took a look at this. And I will, I heard your statement earlier, Your Honor, the employer can surely know about a possible relationship prior to the employee. Before you slide into your first part of your response to my question, you were sort of sliding off into the area of a lack of prejudice, you're saying. And I understand that. Correct. So even if there was some problem, arguably, with the notice, your argument of the respondent was not prejudiced. Was a notice given, in the meaning of the statute, within 45 days after the accident? Can it be given before? How do you address the issue? I would entertain it can't be given before. I mean, the nature. How do you give a notice before, of an accident, before the accident? Your Honor, the nature. Does that make sense to you? I'm sorry. Does that make sense to you? When you consider the nature of repetitive trauma cases, the day of accident is not clearly established by an acute accident. Here, notice was given to the nurse. Even if the application was amended, assuming no statute of limitation problem, back to early 2002, that doesn't change the fact that the respondent had the opportunity to investigate this, which they clearly did. So you say this is a defective notice case, as opposed to no notice? No notice is jurisdictional. Defective notice is a prejudice here. There's certainly notice here. Don't give any notice at all, you have no case. There's notice here. Nurse Bingham, in 2002, unrebutted. Pardon? It was unrebutted testimony that Nurse Bingham had, an employee of the respondent, had notice in early 2002. In 2002? It's within 45 days. But not of an April 2003 accident. She had notice of an April 2002 accident. Not of an April 2003 accident. So one of the two things is going on here. Either the Commission's got a bad date for accident, but they found it was 2002, and you have notice of a 2002 accident. Or the alternative, the Commission got it right, you've got a 2003 accident and no notice for the 2003 accident. You've got notice for a 2002 accident. I will say, even if the Court were to find there was no notice, there was no prejudice given, even in that situation. Prejudice if there's no notice, counsel? It's jurisdictional. No prejudice is required. I would say the response certainly had notice, even with an accident of April of 2003. They were investigating the claim at that point. So clearly, they had notice. So are you saying that you can have an actual notice as opposed to a notice of filing? Absolutely, Your Honor. Within 45 days, the employer was on notice. They were investigating the claim. Is there a single case that supports the notion that you can give notice before the accident? I do not, Your Honor. I didn't think so. Go ahead. I will also address counsel's concerns regarding the fact that he argues the petitioner indicated a 1999 accident. What he failed to mention is, again, we're talking about credibility of testimony. The claimant testified that she gave that date because she was told to do so by the insurance company. So I don't think that's an issue at all here. As far as causation goes, again, we're talking about the credibility of the witness, of the petitioner and the only person to testify live as far as the job activities, Your Honors. Based on that, if there are no further questions, I ask that the commission's findings be affirmed by this Court. Thank you, counsel. Thank you. Yes, you do. You have five minutes. Thank you so much. Counsel, I'll address some phraseology that counsel used. The petitioner was not told to put the 1999 date in the accident report she filled out on April 15, 2003. Her testimony was she was confused as to what goes in that space. And that's the result. If you look at that document, it's written in two different colored inks. And what happened was she made a phone call to the person and said, what do I put there in that line? And the person said, put it down when you first notice the problem with your hands. And that's why she inserted 1999. She was never told to put that date in there. And, again, as Your Honor correctly pointed out, you cannot give notice of an accident a year before it happens. Once the accident has been filed, it is incumbent for notice of that to exist. The fact that in 2002 the lady went in, as her testimony indicates, and says, I have carpal tunnel and I'm wondering how it comes to play within my job. And the lady who she interviewed with identified for her certain factors, and at that point in time was the determination that, oh, it's work-related. That was unrebutted testimony of hers in 2002, and the commission found that in 2002. There was no investigation done until after the application for adjustment of claim. We did an ergonomic study, I believe it was, sometime in 2003. But notice of an accident was never given after the application was filed. I do appreciate your time. I thank you. Thank you, counsel, for your arguments in this matter. This matter will be taken under advisement. A written disposition shall issue.